Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/17/2023 09:05 AM CST

Amanda F., appellee, v.
Daniel K., appellant.

___ N.W.2d ___

Filed February 17, 2023.    No. S-22-498.

1. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
2. **Protection Orders: Injunction.** A protection order is analogous to an injunction.
3. **Protection Orders: Appeal and Error.** Ordinarily, the grant or denial of a protection order is reviewed de novo on the record.
4. **Trial: Witnesses: Testimony.** Witness credibility and the weight to be given a witness' testimony are questions for the trier of fact.
5. **Protection Orders: Sexual Assault: Proof.** A party seeking a sexual assault protection order pursuant to Neb. Rev. Stat. § 28-311.11 (Cum. Supp. 2022) must prove a sexual assault offense by a preponderance of the evidence.
6. **Protection Orders.** A protection order, at its inception, is oriented toward the future with the goal to protect victims from further harm.
7. **Injunction.** The purpose of an injunction is not to punish past actions but to prevent future mischief.
8. **Protection Orders: Injunction: Proof: Presumptions.** Since a civil protection order is in the nature of an injunction, at a contested hearing, the petitioner must establish by a preponderance of the evidence every fact deemed necessary to entitle that party to relief. Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. At that point, the respondent must overcome the presumption that the protection order shall remain in effect.
9. **Protection Orders.** Remoteness of past instances of abuse are a consideration in protection order cases but not necessarily a determinative factor.

10. **Protection Orders: Sexual Assault.** In determining whether a sexual assault protection order should be continued, the court may consider evidence of the likelihood of future harm to the petitioner.

Appeal from the District Court for Scotts Bluff County: Leo P. Dobrovolny, Judge. Affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Danielle Larson and Michelle M. Mitchell, of Legal Aid of Nebraska, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Amanda F. was granted an ex parte sexual assault protection order against her ex-boyfriend, Daniel K., by the district court for Scotts Bluff County. After the close of evidence at a hearing contesting the continuance of the ex parte protection order, the district court found that Amanda's testimony and statements were credible and uncontradicted. The district court found that the evidence showed that a statutory sexual assault offense had occurred and concluded that the risk of future harm was not a consideration under the sexual assault protection order statute, Neb. Rev. Stat. § 28-311.11 (Cum. Supp. 2022). The district court determined that the protection order should remain in effect for a period of 1 year. Daniel appeals and claims that the court erred when it concluded that the risk of future harm was not relevant and that, applying the correct standard, there was not sufficient evidence of a risk of future harm to continue the protection order. In this opinion we clarify, inter alia, that in a contested sexual assault show cause hearing, the risk of future harm is relevant. Upon our de novo review of the record, we see no error in the district court's finding that a sexual assault occurred, and upon reviewing all the evidence relevant to the risk of

future harm to Amanda, we affirm the continuation of the sexual assault protection order.

## STATEMENT OF FACTS

Amanda and Daniel dated each other in 2018 and 2019. According to Amanda, after they had dated for around 6 months, Daniel began to "push the boundaries" and would touch her and put his finger inside her vagina without consent. During one encounter, Daniel rubbed his penis on various parts of Amanda's body and put his finger inside her vagina; at one point, she thought he had tried to put his penis inside her vagina, but he told her that it was his finger.

Amanda and Daniel stopped dating in January 2019 but continued to interact occasionally. Between their breakup and August 2020, they exchanged text messages on several holidays, and Amanda borrowed a book from Daniel and picked up items from his house. She testified that they went hiking together at one point. Amanda, who emphasized the importance of her faith and the faith community in her life, testified that during this period, she was "working very hard to do what I was told to do and forgive [Daniel] how God forgives, which means that I pretended that it didn't happen because God forgives our sins, and so I was supposed to forgive and forget all of it."

In August 2020, Daniel called Amanda to discuss his actions during their dating relationship and sought her forgiveness. During that conversation, Daniel admitted that during the incident in which Amanda was penetrated, Daniel had inserted his penis inside her vagina, and that he had lied when he said it was his finger. Daniel wanted Amanda to forgive his conduct, and if she did not forgive him, he wanted to meet with her so they could reach a peace and he could live "in peace with God."

Amanda was disturbed by the telephone conversation and testified that she sought counsel from her pastor. She explained that "not only was that a really upsetting information to

receive, but it was bringing up something that we had left alone for a very long time that I had hoped to leave alone." Amanda did not feel comfortable "on a personal level" to meet with Daniel but was unsure if she had a moral responsibility to put her "personal feelings aside" and meet with him in person "on a faith level." She testified that she did not "want to be a barrier to anyone's relationship with God."

After Amanda spoke with her pastor and his wife, the pastor reported Amanda's allegations to police, which evolved into a police investigation and criminal charges against Daniel. A jury ultimately found Daniel not guilty, and the charges against him were dismissed.

On May 26, 2022, the day Daniel was acquitted in the criminal case, Amanda filed a petition and affidavit for a sexual assault protection order against him. Based on the allegations in the affidavit, the district court granted an ex parte sexual assault protection order.

Daniel requested a hearing on the protection order, as provided by § 28-311.11(7). At the hearing on June 17, 2022, both parties appeared with counsel. Evidence was adduced, and the court admitted evidence of Amanda's petition and affidavit, as well as documents regarding Daniel's criminal case. Amanda testified regarding her relationship with Daniel, incidents of nonconsensual sexual touching in 2018 and 2019, his telephone call to her in August 2020, and her concern of retaliation after Daniel's acquittal in his criminal case. No other witnesses testified.

Amanda testified that during the criminal investigation and the pendency of the charges against Daniel, she believed that she was under the protection of a no-contact order in the criminal case. She believed that Daniel's acquittal would remove this protection. She testified that a protection order is necessary to keep her safe.

Amanda testified she feared retaliation for reporting the sexual assault. She believed Daniel, his family, and other members of their community blamed her for the criminal

charges. However, she stated that "[i]t's only [Daniel] that I think is going to try to do anything to me." She testified that in January 2019, Daniel told her she was not to tell people what he had done to her "[b]ecause it could be misconstrued and then people might have bad opinions about him, or he would think that I was dragging his name through the mud."

Amanda testified that she did not resist some of Daniel's sexual touching during their relationship because Daniel consistently carried a gun and knife. Amanda did not always resist Daniel when he undressed her and touched her sexually during their relationship, but "[o]nly to the point that it kept [her] from being hurt." When he would "push the boundaries," Amanda sometimes allowed touching she did not want because Daniel told her that "anything that's seen with me resisting can be viewed as a threat." She stated that this meant that if Daniel perceived her as a threat, "he will defend himself and I could get hurt." At other times, he would touch her further than she wanted even if she was "still saying no."

After the hearing, the district court ordered the protection order to remain in effect for 1 year from May 26, 2022. At the end of the hearing, the court had addressed arguments made by the parties and explained the basis of its decision. The court stated that it had reviewed the sexual assault protection order statute and concluded that under § 28-311.11, "the only finding that the Court is required to make" to continue the ex parte order was whether a sexual assault had occurred. The court rejected Daniel's argument that, under the statute, evidence of the risk of future harm was relevant to the outcome.

The court stated that it found Amanda's testimony and statements to be credible and noted there was no other evidence offered suggesting the events did not occur. The court found that Amanda had shown by a preponderance of the evidence that Daniel subjected her to sexual contact or penetration without her consent and continued the sexual assault protection order under § 28-311.11.

Daniel appeals.

## ASSIGNMENTS OF ERROR

Daniel assigns, summarized and restated, that the district court erred as a matter of law when it concluded that the risk of future harm was not relevant to the continuance of a sexual assault protection order under § 28-311.11. Daniel also claims that applying the correct standard, the district court's order was not supported by sufficient evidence.

## STANDARDS OF REVIEW

[1-4] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Mollring v. Nebraska Dept. of Health & Human Servs., ante* p. 251, 983 N.W.2d 536 (2023). A protection order is analogous to an injunction. *Yerania O. v. Juan P.*, 310 Neb. 749, 969 N.W.2d 121 (2022). Ordinarily, the grant or denial of a protection order is reviewed de novo on the record. *Id*. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. Witness credibility and the weight to be given a witness' testimony are questions for the trier of fact. *Malousek v. Meyer*, 309 Neb. 803, 962 N.W.2d 676 (2021).

## ANALYSIS

[5] Section 28-311.11, providing for sexual assault protection orders, became effective on August 24, 2017. The appellate courts have concluded that as an element of proof at a contested hearing, "a party seeking a sexual assault protection order pursuant to § 28-311.11 must prove a sexual assault offense by a preponderance of the evidence." *S.B. v. Pfeifler*, 26 Neb. App. 448, 456, 920 N.W.2d 851, 856-57 (2018). That is, the finding of a sexual assault has been deemed necessary. However, this court has not previously had the opportunity to consider whether additional evidence, and in particular evidence of the risk of future harm, is relevant under

§ 28-311.11 to continue or rescind a sexual assault protection order. We now consider this issue and conclude that such evidence presented by either party is relevant.

In this case, the district court concluded that a finding of sexual assault is "the only finding that the Court is required to make" under § 28-311.11 and further that "[t]he need for [a] protection order maybe is assumed by the [L]egislature." As explained below, we believe that the district court's reading of § 28-311.11 was not a completely correct statement, but upon our de novo review of the record, we affirm its decision to continue the sexual assault protection order.

In this appeal, Daniel urges reversal. He claims that the district court erred when it concluded that the risk of future harm could not be relevant and that, factoring in future harm, the evidence in the record was insufficient to support continuance of the sexual assault protection order. Amanda contends that § 28-311.11 requires only proof of a sexual assault offense for an ex parte sexual assault protection order to remain in effect and that because the district court found a sexual assault had occurred, she urges us to affirm the order.

Before reaching the merits of the parties' arguments, we review and clarify the law governing show cause hearings in sexual assault protection orders under § 28-311.11. We begin with the statute in question, § 28-311.11, which reads in relevant part as follows:

(1) Any victim of a sexual assault offense may file a petition and affidavit for a sexual assault protection order as provided in subsection (3) of this section. Upon the filing of such a petition and affidavit in support thereof, the court may issue a sexual assault protection order without bond enjoining the respondent from (a) imposing any restraint upon the person or liberty of the petitioner, (b) harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner, or (c) telephoning, contacting, or otherwise communicating with the petitioner. The sexual assault

protection order shall specify to whom relief under this section was granted.

. . . .

(7) A sexual assault protection order may be issued or renewed ex parte without notice to the respondent if it reasonably appears from the specific facts shown by affidavit of the petitioner that irreparable harm, loss, or damage will result before the matter can be heard on notice. . . . If the respondent wishes to appear and show cause why the order should not remain in effect for a period of one year, he or she shall affix his or her current address, telephone number, and signature to the form and return it to the clerk of the district court within ten business days after service upon him or her. Upon receipt of a timely request for a show-cause hearing, the court shall immediately schedule a show-cause hearing to be held within thirty days after the receipt of the request for a show-cause hearing and shall notify the petitioner and respondent of the hearing date. The petition and affidavit shall be deemed to have been offered into evidence at any show-cause hearing. The petition and affidavit shall be admitted into evidence unless specifically excluded by the court.

. . . .

(14) For purposes of this section, sexual assault offense means:

(a) Conduct amounting to sexual assault under section 28-319 or 28-320, sexual abuse by a school employee under section 28-316.01, sexual assault of a child under section 28-319.01 or 28-320.01, or an attempt to commit any of such offenses; or

(b) Subjecting or attempting to subject another person to sexual contact or sexual penetration without his or her consent, as such terms are defined in section 28-318.

We observe that § 28-311.11(1) provides the permissible contents of the sexual assault protection order available

and, in particular, states that the order can provide for "enjoining the respondent from" a list of future specified behaviors. Employing the plain meaning principle of statutory construction, *Mollring v. Nebraska Dept. of Health & Human Servs., ante* p. 251, 983 N.W.2d 536 (2023), we conclude that the sensible reading of "enjoining" looks to future behaviors and the future potential harms to be avoided and that consequently, evidence regarding future harm is relevant. In this regard, we observe that other civil protection order statutes, such as the domestic abuse protection order statute, see Neb. Rev. Stat. § 42-924(1)(a)(i) (Cum. Supp. 2022), also use the word "enjoining" and that the cases thereunder have found that evidence of the risk of future harm is relevant under the statute and may be considered by the trial court. See *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). In domestic abuse protection order proceedings, we have explained that the legislative goal to protect survivors of abuse from further harm requires courts to conduct a wider inquiry that weighs the likelihood of future harm to the petitioner in light of all the surrounding circumstances. *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022); *Maria A. on behalf of Leslie G. v. Oscar G., supra*. We believe that such considerations are also relevant under § 28-311.11.

As we observed in *Yerania O. v. Juan P.*, 310 Neb. 749, 969 N.W.2d 121 (2022), we again recognize that the elements supporting differing protection orders vary. However, we determine that the jurisprudential framework under the different civil protection order statutes as it relates to injunctions, burdens of proof, and shifting burdens logically applies to the sexual assault protection order statute, § 28-311.11. The legislative history of § 28-311.11 supports our approach of treating similar language across the civil protection order statutes similarly. Sexual assault protection orders were created to extend civil protection orders to victims of sexual assault, and the legislation "largely mirrors existing civil protection orders such as the harassment protection order and

domestic abuse protection order." See Introducer's Statement of Intent, L.B. 178, Judiciary Committee, 105th Leg., 1st Sess. (Feb. 23, 2017).

[6,7] We have stated that a protection order, "at its inception, is oriented toward the future with the goal to protect victims . . . from further harm." *Garrison v. Otto*, 311 Neb. at 106, 970 N.W.2d at 504. A protection order is analogous to an injunction. *Yerania O. v. Juan P., supra*; *D.W. v. A.G.*, 303 Neb. 42, 926 N.W.2d 651 (2019). An injunction is a remedial process that takes a forward-looking approach. See *Maria A. on behalf of Leslie G. v. Oscar G., supra*. An injunction is a tool of equity, to be implemented on a case-by-case basis as justice and fairness require. *Id*. The purpose of an injunction is not to punish past actions but to prevent future mischief. *Id*.

[8] Since a civil protection order is in the nature of an injunction, at a contested hearing, the petitioner must establish by a preponderance of the evidence every fact deemed necessary to entitle that party to relief. See *id*. Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. *Id*. At that point, the respondent must overcome the presumption that the protection order shall remain in effect. Regarding a respondent who appears, that individual has the opportunity to "show cause why the order should not remain in effect for a period of one year." § 28-311.11(7). We have acknowledged that "in many, if not most, instances," a petitioner's showing is sufficient to merit continuance of an ex parte protection order. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. at 688, 919 N.W.2d at 851. However, courts do not have license to assume future risk where the record does not support such a finding. *Id*.

Applying these principles under § 28-311.11 to the present case, Amanda had the burden to show by a preponderance of the evidence that she was the victim of a sexual assault by Daniel, and as we read § 28-311.11, she had the opportunity to present relevant evidence of future harm for the district

court's consideration. Upon proof of a sexual assault offense, and after other relevant evidence Amanda chose to present, the burden shifted to Daniel to show cause, in light of all the evidence, including the risk of future harm, why the protection order should not remain in effect for 1 year. Given our de novo review, we have examined the record, and as we explain, we determine that continuance of the protection order was warranted.

*Sexual Assault.*

In this case, the district court found that the evidence showed that Daniel "subjected the petitioner to sexual contact or penetration without consent." The existence of a sexual assault offense is a required element under § 28-311.11. See *S.B. v. Pfeifler*, 26 Neb. App. 448, 920 N.W.2d 851 (2018). The district court concluded that Amanda, through her testimony and her sworn statement, showed there was a sexual assault "clearly by a preponderance" of the evidence. In this regard, the district court found that Amanda's testimony and statements were credible. Although Daniel argued at the hearing that he disputed the occurrence of the sexual assault, he offered no evidence at the show cause hearing to contradict the content of Amanda's testimony. In this appeal, he does not argue that the evidence of a sexual assault was insufficient. In our de novo review of the record, we agree with the district court that Amanda carried her burden to show by a preponderance of the evidence that Daniel sexually assaulted her.

*Risk of Future Harm.*

Daniel contends that the district court could not continue an initial ex parte sexual assault protection order without examining whether he posed a risk of future harm to Amanda. As we stated in the framework recited above, we agree that a forward-looking inquiry is appropriate under § 28-311.11.

[9] Daniel contends that because the alleged sexual assault occurred over 3 years before Amanda filed her petition, no future protection was warranted. Appellate opinions

demonstrate that remoteness of past instances of abuse are a consideration in protection order cases but not necessarily a determinative factor. See *Sarah K. v. Jonathan K.*, 23 Neb. App. 471, 873 N.W.2d 428 (2015). We reject Daniel's argument that the passage of time alone precludes continuance of a sexual assault protection order.

In our de novo review, we cannot say that the district court erred when it determined that the protection order should be continued. The evidence in the record supports the belief that absent a protection order, Amanda may be harmed by continued contact and communication with Daniel.

Contrary to Daniel's assertion, the evidence at the show cause hearing did not detail a long-concluded tension between the parties. When Daniel was acquitted in his related criminal trial, Amanda sought protection on the same day. Amanda testified that she was concerned and afraid that Daniel would retaliate against her for having reported the sexual assault and because "the State made [her] tell a room full of strangers" about the episode.

The record shows that after the alleged sexual assault, but prior to the filing of criminal charges, Amanda continued to encounter Daniel in her day-to-day life in their community. Amanda stated that she had been aware that Daniel had pushed her boundaries during their relationship and that she had discussed it with her sister and best friend, but testified she was attempting to "forgive and forget." Until August 2020, Amanda relied on Daniel's assurances that he had not inserted his penis into her vagina. At that point, Daniel called Amanda and reopened the topic of sexual assault and he allegedly confessed to penetrating her with his penis without her consent. Daniel urged Amanda to meet with him and forgive him, but Amanda became upset and was not comfortable meeting him.

Daniel appealed to Amanda's faith, and she sought counsel from her pastor on her moral obligations to Daniel. This evolved into the police report, investigation, criminal charges,

and trial. During their relationship, Amanda believed that Daniel would "hurt" her if she told people. She knew he consistently carried a gun and a knife at that time. She testified that after August 2020, she told many people about the sexual assault, and that Daniel may retaliate and do something to her. Amanda testified that Daniel did not contact her during the time the criminal case no-contact order was in effect. She testified that a protection order was necessary to keep her safe.

A sexual assault protection order is an "avenue of protection for victims of a sexual assault." *S.B. v. Pfeifler*, 26 Neb. App. 448, 453, 920 N.W.2d 851, 855 (2018). Daniel's argument seems to assume that the passage of a few years after a sexual assault and without evidence of a further sexual assault invariably defeats a request for a contested protection order. On the contrary, as we noted above, passage of time is just one factor in the context of a wider inquiry that weighs the likelihood of future harm to the petitioner in light of all the surrounding circumstances. See *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022).

The protective remedy in § 28-311.11 acknowledges that a sexual assault survivor may be harmed when subjected to, inter alia, harassment, communication, and even continued contact with the assailant. See § 28-311.11(1) (reciting actions which may be enjoined). Given their proximity and social and faith community connections, it would be difficult for Amanda to avoid contact with Daniel if she wishes to do so. The record shows that long after their breakup, Daniel contacted Amanda to revisit the sexual assault she had attempted to leave in the past; disclosed a new, disturbing version of events; pushed to meet with her to discuss the sexual assault; and pressured her to forgive his actions. Evidence of such actions is inconsistent with Daniel's thesis of long ago concluded tension. Daniel did not carry his burden to show cause why the protection order should not remain in effect.

## CONCLUSION

[10] As we explain above, under § 28-311.11, the petitioner in a sexual assault protection order proceeding must show by a preponderance of the evidence that a sexual assault offense occurred. In determining whether a sexual assault protection order should be continued, the court may consider evidence of the likelihood of future harm to the petitioner. Upon our de novo review, we determine that the sexual assault protection order was properly continued, and accordingly, we affirm.

Affirmed.