Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/19/2023 09:07 AM CST

- 473 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

Rachel C. on behalf of Clayton R.,
appellee, v. Amos R., appellant.

___ N.W.2d ___

Filed December 12, 2023.    No. A-23-285.

1. **Protection Orders: Injunction: Appeal and Error.** A protection order
   pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2022) is analogous to
   an injunction; thus, the grant or denial of a protection order is reviewed
   de novo on the record.
2. **Protection Orders: Appeal and Error.** In a de novo review of the
   grant or denial of a domestic abuse protection order, an appellate court
   reaches conclusions independent of the factual findings of the trial court.
3. ____: ____. In a de novo review of the grant or denial of a domestic
   abuse protection order where the credible evidence is in conflict on a
   material issue of fact, the appellate court considers and may give weight
   to the circumstances that the trial judge heard and observed the wit-
   nesses and accepted one version of the facts rather than another.
4. **Appeal and Error.** An appellate court will not consider an argument or
   theory that is raised for the first time on appeal.
5. **Protection Orders: Proof.** At a show cause hearing in domestic abuse
   protection order proceedings, the petitioner must establish by a pre-
   ponderance of the evidence the truth of the facts supporting his or her
   entitlement to relief; once that burden is met, the burden shifts to the
   respondent to show cause as to why the protection order should not
   remain in effect.
6. **Protection Orders.** In determining whether an ex parte protection
   order should be affirmed, the occurrence of domestic abuse is a thresh-
   old issue.
7. ____. Because the goal of protection orders is preventing future harm,
   the court may consider factors pertinent to the likelihood of future harm,
   including the remoteness, severity, nature, and frequency of past abuse;
   past or pending credible threats of harm; the psychological impact of

- 474 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships.

8. ____. In domestic abuse protection order proceedings, different remedies are required when there has been an isolated act of abuse that is unlikely to recur, as compared to an egregious act of abuse preceded by a pattern of abuse.

9. **Protection Orders: Time: Appeal and Error.** When the period between the abuse and the filing of the petition for a protection order spans months, appellate courts have found the past abuse to be remote; however, in some cases, even though the instances of abuse were remote in time, protection orders have been affirmed pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2022).

Appeal from the District Court for Buffalo County: John P. Rademacher, Judge. Affirmed in part, and in part reversed and remanded with directions.

Nicholas R. Glasz, of Glasz Law, for appellant.

Mark T. Bestul, of Legal Aid of Nebraska, for appellee.

Pirtle, Chief Judge, and Moore and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Amos R. appeals from the order of the district court for Buffalo County, which affirmed the previously entered ex parte protection order against Amos and in favor of Clayton R., the child Amos shares with Rachel C. Originally, the ex parte order was entered on behalf of Rachel, her daughter Merrick C., and Clayton. After a show cause hearing, the court dismissed the protection order as to Rachel and Merrick, but affirmed the ex parte protection order for Clayton and ordered that it remain in full force and effect for a period of 1 year from the date of its original issuance.

On appeal, Amos claims that the trial court erred in considering the petition for a protection order filed by Rachel, because it lacked particularity pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2022). Amos further argues that the

- 475 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

court erred by continuing the ex parte protection order as to Clayton. Upon our de novo review, we find that the court erred by not modifying the terms of the protection order to allow telephone, videoconference, and supervised contact between Amos and Clayton. We therefore reverse that portion of the court's order and remand the cause with directions to modify the protection order.

## BACKGROUND

On February 27, 2023, Rachel was granted a 1-year ex parte domestic abuse protection order against Amos for herself, her daughter Merrick, and her son Clayton. In her petition and affidavit seeking the order, Rachel stated that Amos had a child abuse charge stemming from an incident that occurred in October 2022. No description of the incident was made in the petition, but photographs of Clayton were attached and referenced in the petition. The photographs demonstrate bruises on Clayton's body. In addition, Rachel listed seven incidents that she claimed were the most recent and most severe acts of domestic abuse perpetrated by Amos. These incidents included allegations that Amos pressured Rachel into unwanted sexual contact and intercourse, that Amos tracked Rachel's location without her permission, and that Amos made inappropriate comments toward Merrick. Amos timely filed a request for hearing, and a show cause hearing was held in March 2023. Amos and Rachel were the only witnesses to testify at the hearing.

Amos and Rachel have never been married, but they have known each other for roughly 11 years and have been romantically involved in the past. Prior to these proceedings, the couple lived together with Merrick and Clayton. At the time of the hearing, Merrick was 12 years old and Clayton was 7 years old. Amos is Clayton's biological father. According to Amos, there are no custody or visitation orders in place for Clayton, but Amos does pay Rachel child support pursuant to an order of paternity. Merrick is not Amos' biological

- 476 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

daughter, but Rachel described her as his "stepdaughter-ish" because Merrick has known Amos since she was 2 or 3 years old. During his testimony, Amos referred to Merrick as "our daughter."

During her testimony, Rachel affirmed that the allegations made in the petition were true. Over Amos' objection, the trial court received the petition without condition. Rachel admitted at the show cause hearing that some of the incidents listed in her petition did not necessarily meet the statutory definition of domestic abuse. To this end, she testified only about those incidents she believed supported her petition. Because this appeal concerns the protection order only as it relates to Clayton, we focus on the incidents in which he is mentioned.

Of greatest import was an incident that occurred in October 2022 when Amos had physical contact with Clayton. Rachel testified that she witnessed Amos beating Clayton. The day after the incident, she took pictures of bruises on Clayton's arm and leg. As a result of the incident, the State originally pursued an intentional child abuse charge against Amos, but pursuant to a plea agreement, Amos pled no contest to negligent child abuse causing no serious bodily injury, a Class I misdemeanor pursuant to Neb. Rev. Stat. § 28-707(3) (Cum. Supp. 2022).

While the criminal case was pending, there was a no contact order in effect that prevented Amos from having contact with either Merrick or Clayton. In December 2022, prior to entering into the plea agreement, Amos requested that the no contact order be vacated, and Rachel supported his request. The order was vacated, and Amos reentered the family home. However, as a condition of his bond, the county court in the criminal case ordered that Amos could have contact with the children only if Rachel was present. The county court further ordered that Amos was not allowed to physically discipline the children. Rachel admitted that after returning to the home, Amos did not physically harm the children, but she testified that he repeatedly instructed her to physically discipline them.

- 477 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

Prior to being sentenced on his negligent child abuse conviction, Amos completed an anger management class at the recommendation of a friend. Amos also began individual counseling in December 2022. He testified that neither of these activities were court-ordered and that he started counseling because of the incident with Clayton.

At Amos' sentencing hearing, the county court in the criminal case was made aware of the ex parte domestic abuse protection order for Rachel, Merrick, and Clayton. Amos was subsequently sentenced to 18 months of probation. His probation order does not mention the ex parte order and does not limit his contact with Clayton. Certified copies of Amos' criminal case records were submitted to the trial court in this case, but these records do not include a factual description of the October 2022 incident.

Rachel also testified about an incident observed, at least in part, by Clayton on January 30, 2023, approximately 3 weeks prior to her filing her petition for a protection order. Rachel, Amos, and the children were all home one evening, and Amos was making popcorn in the kitchen. Rachel went to her bedroom, and when she returned to the kitchen, popcorn and hot oil were spilled on the floor. Rachel believed that Amos might have thrown the popcorn onto the floor.

Amos testified that he did not purposefully throw the popcorn and hot oil onto the floor. He claimed that as he was emptying the popcorn maker, the pot fell and hit the floor. He further testified that he had experienced multiple stressors at work and home that day and that he had hit his limit when the pot fell. Following his counselor's advice, he recognized that he was upset and walked away from the mess until he calmed down and felt reasonable enough to address it.

Rachel's assessment of the situation left her feeling that it was not safe for her and the children to spend the night in the house with Amos. She testified that she was afraid of "him getting mad at us and him throwing things." Amos and Rachel began arguing about whether she and the children

- 478 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

were leaving. Both children were present for this argument and began to cry. Rachel testified that Amos told her that she and the children were not leaving. She further testified that Amos stood in front of the bedroom doorway, blocking her exit, as they argued and that she felt threatened by his behavior. As Amos and Rachel continued arguing, Merrick called her maternal grandfather, who came and removed her and Clayton from the home. Rachel stayed with Amos for another hour or two before she left as well. She testified that Amos was crying and only allowed her to leave once she agreed to return the following day. Amos, however, testified that he did not ask Rachel to promise to return.

Several other incidents involving unwanted sexual contact and intercourse instigated by Amos were detailed in the petition and Rachel's testimony. These events occurred most closely in time to the point at which Rachel filed her petition. Rachel stated that Merrick and Clayton are scared as a result of her relationship with Amos and that they worry about Amos' being mad at them. She felt that if the protection order was not continued, Amos would cause future harm to herself and the children. On cross-examination, Rachel admitted that days before she filed the petition, she had sent Amos intimate photographs and text messages telling him she loved him. However, she explained that she did these things "[t]o keep [Amos] happy."

At the conclusion of Rachel's evidence, Amos moved to dismiss the ex parte protection order on the grounds that Rachel failed to meet her burden of proof. The court sustained the motion to dismiss as to Merrick, but overruled the motion as to Rachel and Clayton. Amos then testified in his own behalf as detailed above. At the conclusion of all the evidence, the matter was taken under advisement.

On April 4, 2023, the trial court entered an order dismissing the protection order as to Rachel and Merrick, but continuing the ex parte protection order for Clayton. After reviewing the petition, Rachel's testimony, and the text messages between

- 479 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

Amos and Rachel, the court found that there were inconsistencies regarding the allegations of nonconsensual sexual contact. The court concluded that it was "not persuaded [Amos] knowingly or intentionally caused [Rachel] bodily injury."

In regard to Clayton, the court found that Amos intentionally and knowingly caused bodily injury to him, because Rachel witnessed the event and Amos did not dispute the abuse. The court explained that the reduction in Amos' criminal charge did not mean that domestic abuse did not occur. Additionally, the trial court stated, "[I]t is reasonable to conclude that the criminal court may have found a no contact condition of probation was unnecessary because of [its knowledge of] the protection order." The fact that no additional incidents of abuse of Clayton occurred since October 2022 was attributed to Amos' bond conditions. The court also found that the October 2022 abuse was "likely psychologically harmful to Clayton." The court concluded that there was a reasonable likelihood of future harm to Clayton and that a protection order was needed to prevent such future harm. Amos appeals.

## ASSIGNMENTS OF ERROR

Amos assigns, summarized and restated, that the trial court erred in (1) considering Rachel's petition and affidavit for a protection order as it lacked particularity under § 42-924 and (2) continuing the protection order as it relates to Clayton.

## STANDARD OF REVIEW

[1-3] A protection order pursuant to § 42-924 is analogous to an injunction; thus, the grant or denial of a protection order is reviewed de novo on the record. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard

- 480 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

### SUFFICIENCY OF PETITION

Amos first argues that the trial court erred in considering the petition, because it lacked particularity under § 42-924(1)(c) (Cum. Supp. 2023). Section 42-924(1)(c) (Cum. Supp. 2023) requires that "[t]he petition for a protection order shall state the events and dates or approximate dates of acts constituting the alleged domestic abuse, including the most recent and most severe incident or incidents." We note that although Amos references § 42-924(1)(c) (Supp. 2023), that version was not operative until after the April 2023 order being appealed. However, the language of § 42-924(1)(c) (Supp. 2023) is identical to that of § 42-294(1)(b) (Cum. Supp. 2022), which is the applicable version of the statute herein.

Rachel asserts that this assignment of error is akin to a Neb. Ct. R. Pldg. § 6-1112(b)(6) motion to dismiss, such that Amos is arguing Rachel's pleading fails to state a claim upon which relief can be granted. Rachel then counters that Amos failed to raise this issue with the trial court and that therefore, it cannot be considered by this court.

[4] Nebraska law states that an appellate court will not consider an argument or theory that is raised for the first time on appeal. *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021). After reviewing the record, we find that Amos' particularity argument was never raised at trial. When the court asked whether Amos objected to the introduction of the petition as an exhibit, Amos' trial counsel responded, "[f]or the purposes — not for the limited purpose of this hearing and not for the truth of the matter asserted." The petition was received as an exhibit without limitation. Amos' current assignment of error and argument are raised for the first time on appeal. Therefore, we will not consider it.

- 481 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

### Sufficiency of Evidence

Amos' second assignment of error is that the trial court erred in continuing the ex parte protection order as to Clayton. The Protection from Domestic Abuse Act, Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016 & Cum. Supp. 2022), provides that a victim of domestic abuse may file a petition and affidavit for a protection order with the clerk of the district court. See § 42-924. See, also, *Maria A. on behalf of Leslie G. v. Oscar G., supra.* Section 42-903(1) defines abuse as the occurrence of one or more of the following acts between family or household members:

> (a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;
>
> (b) Placing, by means of credible threat, another person in fear of bodily injury. . . ; or
>
> (c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

Family or household members include biological parents and persons who have resided together in the past. § 42-903(3).

[5] Section 42-925(1) allows a domestic abuse protection order to be issued ex parte under certain circumstances, but such order is temporary and the respondent may request a show cause hearing. At the show cause hearing, the petitioner must establish by a preponderance of the evidence the truth of the facts supporting their entitlement to relief. See, *Amanda F. v. Daniel K.*, 313 Neb. 573, 984 N.W.2d 909 (2023); *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). If the petitioner is successful, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. *Amanda F. v. Daniel K., supra.*

[6-8] In determining whether an ex parte protection order should be affirmed, the occurrence of domestic abuse is a threshold issue. *Maria A. on behalf of Leslie G. v. Oscar G., supra.* Further, the Nebraska Supreme Court has recognized that

- 482 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

in many, if not most, instances, a showing of abuse under
§ 42-903 is sufficient to merit the affirmation of an ex
parte protection order; but as we have explained, it is not
the only consideration in resolving the issue presented:
whether an ex parte protection order should remain in
effect to prevent future harm. We agree . . . that protecting
victims of domestic abuse is of the utmost importance,
but courts do not have license to assume future risk where
the record does not support such a finding.

*Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. at 688,
919 N.W.2d at 851. Because the goal of protection orders is
preventing future harm, the court may consider factors pertinent to the likelihood of future harm, including the remoteness, severity, nature, and frequency of past abuse; past or
pending credible threats of harm; the psychological impact of
domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships. *Maria A.
on behalf of Leslie G. v. Oscar G., supra*. This court has specified that different remedies are required when there has been
an isolated act of abuse that is unlikely to recur, as compared
to an egregious act of abuse preceded by a pattern of abuse.
*Sarah K. v. Jonathan K.*, 23 Neb. App. 471, 873 N.W.2d 428
(2015) (citing *Coburn v. Coburn*, 342 Md. 244, 674 A.2d
951 (1996)).

Applying these principles to the present case, we first note
that Rachel did not appeal the court's decision to dismiss the
petition as to herself and Merrick. We, therefore, limit our
analysis to Clayton.

In her petition and in her trial testimony, Rachel discussed
the October 2022 incident where Amos had physical contact
with Clayton. She witnessed the contact and described it
as a beating. Amos did not contest that he was the cause of
Clayton's bruises. Based on this event, the trial court found
that Rachel showed by a preponderance of the evidence that
Clayton was a victim of domestic abuse by Amos. The court
explained that while Amos was convicted of negligent child

- 483 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

abuse, not intentional child abuse, Rachel's testimony and Amos' failure to dispute the incident established the abuse as intentional.

We agree that Rachel sustained her burden of proof to show Clayton was a victim of domestic abuse by Amos. While we acknowledge that Amos was actually convicted of negligent child abuse, his plea to that charge was pursuant to a plea agreement agreed to by the State. The only evidence of the actual events that precipitated the original charge presented at trial herein was that Amos beat Clayton in a manner sufficient to cause bruising. No rebuttal was given to this evidence. Thus, we give weight to the circumstances that the trial judge heard and observed the witnesses and accepted Rachel's testimony.

Because Rachel has met her burden, the burden now shifts to Amos to show cause why Clayton's protection order should not remain in effect or, in other words, why future harm is unlikely in this case. To determine the likelihood of future harm, we review below several factors for future harm as discussed in the pertinent case law.

[9] We first address the remoteness of past abuse. When the period between the abuse and the filing of the petition for a protection order spans months, we have found the past abuse to be remote. See, e.g., *Sarah K. v. Jonathan K., supra* (past abuse was remote due to 12-week period between incident and filing); *Ditmars v. Ditmars*, 18 Neb. App. 568, 788 N.W.2d 817 (2010) (past abuses were remote due to 2-month and 7-month delay in filing). In some cases, even though the instances of abuse were remote in time, we have affirmed protection orders pursuant to § 42-924. See, e.g., *Sarah K. v. Jonathan K., supra* (affirming protection order despite remoteness because petitioner delayed filing until criminal case's no contact order expired).

Here, Rachel's petition was filed on February 24, 2023, exactly 4 months after the abuse of Clayton occurred on October 24, 2022. While there was originally a no contact

- 484 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

order preventing Amos from having contact with Clayton, that order was vacated on December 15, with Rachel's support. Therefore, at the time the petition was filed, the past abuse was somewhat remote.

However, we do not end our inquiry here. We must consider more recent events that may have given Clayton cause to believe he was in danger. The only other event noted in the testimony that clearly was observed by Clayton involved the aftermath of the popcorn spilled by Amos on January 30, 2023. We note that Rachel did not testify whether Clayton was present during any of the occasions where she stated that Amos instructed her to physically discipline a child. However, according to Rachel, Clayton did observe the argument between Amos and her when she wanted to remove the children from his presence out of fear of what Amos might do while angry. According to Rachel, this caused Clayton to cry prior to being removed from the family home by his grandfather.

There was also evidence that Amos had experienced issues with anger management and had voluntarily taken a course and sought counseling to help him better manage stressful situations. Amos testified that he sought to follow his counselor's advice by withdrawing from the scene of the spill and calming down before he dealt with the issue at hand. This event happened approximately 3 weeks prior to Rachel's filing her petition for a protection order. While we would hesitate to find this event to be characterized as abusive toward Clayton, it did include an exhibition of anger on Amos' part that could have made Clayton fearful. Nonetheless, Rachel returned home with the children at some point thereafter because she detailed four events specifically related to her interactions with Amos that occurred in February 2023. The trial court eventually found those events not to be sufficient to justify the continuation of the protection order in favor of Rachel and Merrick.

- 485 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

The trial court did note that the bond conditions requiring that Rachel be present any time Amos was around the children were still in effect at the time the protection order was sought and initially entered. Five days after the protection order was received, the bond conditions ended because Amos was at that time sentenced. The probation order did not prohibit contact between Amos and Clayton.

In conclusion, the past actual abuse toward Clayton is remote. However, other factors, such as Amos' continued struggles with anger control during a period of restricted contact with Clayton, are still present. These factors tend to negate a finding that the risk of future harm is minimal based on the remoteness of the past abuse.

Next, we consider the physical nature of the past abuse. Rachel testified that the October event was a beating inflicted by Amos, and as a result of the abuse, Clayton was bruised on his arm and leg. She submitted photographs of the bruises to the trial court, but our review of these photographs is hampered by the poor image quality contained therein. Amos ultimately entered into a plea agreement wherein he was convicted of negligently abusing Clayton, but not causing serious bodily injury. The October 2022 incident was the only actual event of abuse toward Clayton proved by a preponderance of the evidence.

Rachel also testified to the January 2023 popcorn incident and the ensuing argument that caused Clayton to cry. While this incident was upsetting to Clayton and possibly placed him in fear of Amos, it included no physical abuse. There was no attempt to cause bodily injury and no verbal threat of imposing bodily injury. There is some evidence that prior to the October 2022 incident, Amos may have imposed physical discipline on Clayton, because according to Rachel, he instructed her to physically discipline the children once he was allowed back into the home.

The trial court attributed the lack of additional incidents of abuse to Amos' bond conditions. We note that abiding by

- 486 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

bond conditions is a choice that some defendants make, and others do not. Amos' choosing to follow his bond conditions can be seen as a positive aspect of his case. However, we must recognize that the evidence indicated that when Amos was not constrained by court order, physical discipline and, at least on one occasion, physical abuse, was utilized by Amos.

The next question to consider is whether, based on the evidence adduced, there remains a credible threat of harm. The Supreme Court has found that the term "credible threat" in § 42-903 means that the evidence at trial must include some threat of intentional physical injury or any other physical threat. *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014). Here, the record is devoid of any pending credible threats of harm made by Amos toward Clayton. While Amos does appear to have an ongoing anger control issue, the evidence shows that he has taken steps to better himself and prevent future harm to Clayton, such as attending counseling and completing an anger management class. There is little evidence to suggest that Amos wants to harm Clayton. The evidence is less clear as to whether Amos would respond appropriately if his anger was aroused, particularly if the trigger for that anger involved misbehavior by Clayton.

Rachel's petition does not contain any allegations that Clayton has suffered a psychological impact as a result of Amos' domestic abuse. At trial, Rachel testified that Clayton is scared as a result of her relationship with Amos and that he worries if Amos is mad at him. The trial court ultimately found that the physical abuse Clayton suffered was likely psychologically harmful to him. We recognize that Rachel's testimony is concerning. To the degree that it indicates Clayton may fear his father, we agree that it could be harmful. But our record regarding the overall nature of the father-son relationship herein is not well developed. And we note that within 2 months of the October 2022 incident and within a few days of the January 2023 incident, Rachel and the children were reunited in the family home with Amos. Given the lack of

- 487 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

other evidence provided regarding Clayton's psychological status, it is difficult to determine whether contact between Amos and Clayton would be likely to have a detrimental psychological impact.

As it stands, the protection order prohibits Amos from contacting or communicating with Clayton for a period of 1 year from the date the ex parte order was issued. A year without communication between Amos and Clayton would negatively impact their relationship, as it would any parent-child relationship. While the prior abuse is cause for concern, we question whether an absolute deprivation of contact between father and son is called for—particularly where Amos has demonstrated an ability to abide by his bond conditions for an extended period of time. After Amos reentered the home, there is no evidence that he had contact with the children outside the presence of Rachel or that he imposed any type of physical discipline. Consequently, the question becomes not simply whether or not Amos should be allowed contact with Clayton, but what level of contact is appropriate.

Prior to these proceedings, Amos and Rachel had a romantic relationship and functioned as a parental unit for both Merrick and Clayton. The couple and the two children lived together in a family home, and Rachel testified that Merrick was like Amos' stepdaughter. During his testimony, Amos even referred to Merrick as "our daughter." However, by the time Rachel sought the protection order, her relationship with Amos had clearly broken down.

The record does not comment on how the children have reacted to this shift in family dynamics or Amos' absence from the home. However, we note that the trial court's order presents an awkward situation for the family unit, as Amos can have contact with Rachel and Merrick, but he cannot contact Clayton. We question whether the court needed to absolutely prohibit Amos from having any contact with Clayton. Condition 3 of the protection order provides as follows: "Respondent is enjoined and prohibited from telephoning,

- 488 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

contacting, or otherwise communicating with the petitioner(s), except . . . .'" But the ex parte protection order provided no exceptions. The court's order affirming the ex parte protection order as to only Clayton also provided for no exceptions.

While we agree that, though a close call, the record does support the continuation of the protection order as to Clayton, the evidence does not support continuing a protection order that absolutely prohibits all contact between father and son. The evidence demonstrates that Amos is willing to comply with orders that limit his contact with his children. Therefore, we find it hard to fathom how telephone, videoconference, or supervised contact between Amos and Clayton would pose a risk of harm to Clayton, particularly given that condition 2 of the protection order prohibits Amos from threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of Clayton. Therefore, we find that rather than simply affirming the ex parte order, the court should have provided for a means of contact between Amos and Clayton that would minimize any potential for future harm while still allowing some level of relationship to exist. As such, we reverse the finding of the trial court only to the extent of directing the court to determine conditions under which Amos could have contact with Clayton by telephone, by videoconference, or in an in-person supervised setting.

In sum, our analysis of factors involving the potential of future harm do support the continuation of a protection order in favor of Clayton. They do not, however, support an absolute prohibition of contact between Amos and Clayton. As the Supreme Court has stated, "[C]ourts do not have license to assume future risk [of harm] where the record does not support such a finding." *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 688, 919 N.W.2d 841, 851 (2018). In keeping with *Sarah K. v. Jonathan K.*, 23 Neb. App. 471, 873 N.W.2d 428 (2015), a different remedy is required in these types of cases as compared to the cases with an egregious act of abuse preceded by a pattern of abuse. Thus, we find

- 489 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
RACHEL C. ON BEHALF OF CLAYTON R. v. AMOS R.
Cite as 32 Neb. App. 473

that Amos has met his burden of proof in part and that it was improper to continue the ex parte protection order as originally written as it relates to Clayton. Therefore, we remand the cause to the trial court with directions to modify the terms of the protection order to allow telephone, videoconference, and supervised contact between Amos and Clayton.

## CONCLUSION

Following our de novo review, we affirm the trial court's conclusion that the ex parte protection order should remain in effect in favor of Clayton and against Amos. However, we also conclude that the trial court erred by not modifying the terms of the protection order to allow telephone, videoconference, and supervised contact between Amos and Clayton. We, therefore, reverse that portion of the judgment and remand the cause with directions to modify the terms of the protection order with respect to allowable contact as it relates to Clayton.

Affirmed in part, and in part reversed
and remanded with directions.