IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

SCHROEDER V. CLOUSE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

WHITNEY A. SCHROEDER, APPELLEE,

V.

BENJAMIN A. CLOUSE, APPELLANT.

Filed March 24, 2026.    No. A-25-624.

Appeal from the District Court for Frontier County: MARK J. YOUNG, Judge. Affirmed.

James A. Wagoner for appellant.

Jaclyn N. Daake, of Daake Law Office, L.L.C., for appellee.

RIEDMANN, Chief Judge, and BISHOP and WELCH, Judges.

RIEDMANN, Chief Judge.

## INTRODUCTION

Following the entry of an ex parte protection order, the respondent requested a show cause hearing in which he contested the continuation of the order. Based upon the evidence received at the hearing, the district court for Frontier County determined the order should remain in effect for 1 year. The respondent appealed. Based on our de novo review, we affirm the district court's order.

## BACKGROUND

Whitney A. Schroeder and Benjamin A. Clouse began dating in late January 2025. At the time, Schroeder was the county attorney for two counties, and Clouse was a deputy sheriff in a nearby county. They spent the night together on Valentine's Day, but on February 16, Schroeder informed Clouse via text message that she no longer wanted to have a relationship with him. According to Schroeder, over the next week, she received "a plethora of desperate texts and social media messages" from Clouse. This continued until the Frontier County sheriff, at Schroeder's

request, telephoned Clouse and told him to stop trying to contact Schroeder. According to Clouse, he ceased any further attempts to contact her after February 20.

Schroeder filed a petition and affidavit for a harassment protection order on April 24, 2025. In addition to the information set forth above, Schroeder stated that on February 20 she noticed fresh footprints in the snow leading to her living room window. This led her to contact both the Frontier County Sheriff's Department and the sheriff's department where Clouse was employed. Clouse was placed on administrative leave on February 21 and was terminated on February 24. Schroeder identified several incidents allegedly involving Clouse. She claimed that on March 26, he rode past her house on a bicycle and on March 8 and April 17, he appeared at the location where she was exchanging her children with their father for parenting time. She further stated that on approximately 13 occasions since February 16, Clouse's vehicle has either passed her or followed her while she was traveling in her car.

In a narrative attached to her petition, Schroeder listed 13 messages from February 16 to 20, 2025, that she received from Clouse. She relayed that on March 31, a friend sent her a video taken about 2 a.m. in which four state patrolmen and two sheriff deputies were across the street from Schroeder's house with "a tall man, who appears to be [Clouse]." Finally, she detailed that from April 5 though 23 she had received "incessant phone calls from various 'spoof' phone numbers."

The district court entered an ex parte harassment protection order on April 28, 2025. The next day, Clouse filed a request for hearing on the protection order. The hearing was scheduled for May 14 but was later continued to July 8.

At the hearing on the show cause order, the petition and affidavit were received into evidence. Both Schroeder and Clouse testified along with the Frontier County sheriff and one of his deputies. The law enforcement officers corroborated Schroeder's claims regarding the footprints in the snow and Schroeder's request for assistance. The sheriff described Schroeder's demeanor as "scared" when reporting these events. Clouse called a friend to testify to address Schroeder's allegation regarding one of the encounters that occurred while she was exchanging her children with their father.

Clouse denied the allegations of the petition except for the initial attempts to contact Schroeder, which he claimed ended on February 20, 2025, after he was contacted by the sheriff. He offered bank records to rebut testimony that he was present at certain locations at specific times and phone records to rebut testimony that he had called Schroeder after February 20. On cross-examination, Clouse confirmed that his ex-wife had sought a protection order containing allegations that Clouse was appearing in locations where she was present when he should not have known where she was, similar to the allegations here.

The court filed a journal entry in which it acknowledged that Clouse successfully rebutted some of the encounters claimed by Schroeder. However, even without considering these incidents, the district court found the direct and circumstantial evidence led to a finding that Clouse attempted to contact Schroeder on numerous occasions, was responsible for the footprints outside her window, and was the man depicted in the video across the street from her house. It further found that the evidence "strongly suggests" that Clouse made the "spoof calls" and that all these events constituted a course of conduct that would seriously threaten or intimidate an individual. Accordingly, it continued the protection order for 1 year. Clouse appeals.

ASSIGNMENTS OF ERROR

Restated and reordered, Clouse assigns that the district court erred in (1) relying upon circumstantial evidence to determine that he was outside of Schroeder's home on two occasions and made "spoof calls" to her; (2) finding phone calls to Schroeder in mid-February 2025 evinced conduct that intimidated, threatened, or terrified her and had no legitimate purpose; and (3) determining credible evidence supported the issuance of a protection order.

STANDARD OF REVIEW

The grant or denial of a protection order is reviewed de novo on the record. *Dugan v. Sorensen*, 319 Neb. 326, 22 N.W.3d 623 (2025). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

ANALYSIS

The Legislature has enacted laws to protect victims from being willfully harassed, intentionally terrified, threatened or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty. See Neb. Rev. Stat. § 28-311.02 (Reissue 2016). The definition of harassment is provided by § 28-311.02(2)(a): "Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." Course of conduct is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person." See § 28-311.02(2)(b).

Although the conduct described above must also not serve a legitimate purpose, the Legislature did not define that phrase. Recently, the Nebraska Supreme Court articulated that under § 28-311.02(2)(a), the inquiry of whether the course of conduct directed at a specific person serves a legitimate purpose consists of two parts: (1) whether the actor genuinely holds a justifiable purpose for engaging in the course of conduct and (2) whether the course of conduct is in logical service of such purpose under the circumstances. *Flinn v. Strode*, 320 Neb. 813, 30 N.W.3d 661 (2026).

With these definitions in mind, we turn to Clouse's assigned errors.

*Circumstantial Evidence.*

Clouse assigns as error the district court's finding that he attempted to contact Schroeder based upon the footprints in the snow, a video of law enforcement with a man (allegedly Clouse) across the street from Schroeder's house in the early morning hours, and numerous "spoof calls" to Schroeder's phone.

Schroeder discovered the footprints the evening of February 20, 2025, 4 days after she advised Clouse she no longer wanted to have a relationship with him and the day she blocked him on all social media platforms and her cell phone. The footprints measured more than 12 inches in

length, thus suggesting to her that they were left by a male. Photographs of the footprints were admitted into evidence. Schroeder testified she had her "suspicions" as to whom the footprints belonged. A deputy sheriff patrolled the area looking for Clouse's vehicle but was unable to locate it.

On March 31, 2025, Schroeder received a video from a friend that showed four state patrolmen and two sheriff deputies directly across the street from Schroeder's house around 2 a.m. They were talking with a "tall man" who appeared to be Clouse, according to Schroeder.

Regarding the "spoof calls," Schroeder's affidavit details the dates on which she received these calls. She stated that she researched the origin of the numbers and discovered they were "generated from origin applications, which allow users to call from spoof phone numbers." Clouse testified that as a law enforcement officer, he was aware of methods to contact individuals without using a cell phone application.

Although Clouse testified that the footprints in the snow were not his, he was not the individual in the video, and he did not place the "spoof calls" to Schroeder, witness credibility and the weight to be given a witness' testimony are questions for the trier of fact. *Amanda F. v. Daniel K.*, 313 Neb. 573, 984 N.W.2d 909 (2023). And although on a de novo review, we reach conclusions independent of the factual findings of the trial court, we may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Dugan v. Sorensen*, 319 Neb. 326, 22 N.W.3d 623 (2025).

There is no dispute that Schroeder broke off the relationship with Clouse despite his desire to continue it. This was followed by 4 days during which Clouse repeatedly try to contact her, to no avail. It is also uncontroverted that after Schroeder discovered footprints in the snow under her window, she contacted Clouse's employer, who placed him on administrative leave and then terminated him. The suspicious activity outlined in Schroeder's affidavit occurred shortly thereafter. Based on this record, we find no error in the district court's conclusion that the circumstantial evidence in this case implicates Clouse in these activities.

*February 2025 Messages.*

Clouse assigns that the district court erred in finding that the February 2025 phone calls evinced conduct that intimidated, threatened, or terrified Schroeder and had no legitimate purpose. However, even if we were to agree with Clouse, we find no reversible error.

On February 16, 2025, Schroeder sent Clouse a text message that stated:

I need to be clear, that all of this has forced me to see things with you differently and I don't think there is any room at this point for us to be in a relationship based on my feelings that have changed based on these circumstances. I wish you the best of luck.

Clouse admitted that after receiving this message, he attempted to contact Schroeder from February 16 through 20, 2025. He explained he was trying to convince her that he was not still involved with his ex-wife and that he wanted to be in a relationship with Schroeder. The evidence reveals he sent 12 messages and placed one phone call to Schroeder over this short period, but none of the messages are contained within our record. All went unanswered.

On appeal, Clouse argues these messages were not seriously threatening, harassing, or intimidating and they served a legitimate purpose. However, regardless of whether the text

messages themselves meet the definition of harassment, they mark just the beginning of a course of conduct upon which the district court based its decision to continue the harassment protection order. And given the continuing behavior as found by the district court, we need not determine whether these text messages served a legitimate purpose. Rather, we affirm the continuation of the harassment protection order on the totality of the circumstances as explained below.

*Issuance of Protection Order.*

Clouse assigns that the district court erred in determining that credible evidence was presented to justify issuance of the protection order sought by Schroeder. We disagree.

Schroeder was issued an ex parte protection order after which Clouse requested a show cause hearing. A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true. *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). A protection order is analogous to an injunction, and a party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle that party to relief. *Id*. As such, the petitioner at a show cause hearing following an ex parte order has the burden to prove by a preponderance of the evidence the truth of the facts supporting a protection order. *Id*. Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. *Id*.

At issue is whether the evidence was sufficient to establish that Clouse engaged in a knowing and willful course of conduct directed at Schroeder which would seriously terrify, threaten, or intimidate a reasonable person and which served no legitimate purpose. See *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013) (applying objective standard). The petitioner's burden is to establish by a preponderance of the evidence the truth of the facts supporting a protection order. *Diedra T., supra*. If petitioner's burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. *Id*. Giving weight to the district court's credibility determinations as set forth above, we determine that Schroeder met her burden, and Clouse failed to show cause why the protection order should not remain in effect.

Following numerous unanswered text messages, Schroeder blocked Clouse from her social media platforms and her cell phone. That night she observed a man's footprints in the snow outside her window, which the district court determined to be Clouse's. She reported this to Clouse's employer, and he was terminated shortly thereafter. Weeks later, Clouse was recorded as being across the street from her house in the early morning hours interacting with law enforcement. Thereafter, Schroeder began receiving "spoof calls" from him. When she reported these incidents to the sheriff, she appeared scared, and her affidavit in support of her protection order indicates that these events are interfering with her job and she is constantly "looking over [her] shoulder."

Clouse rebutted some of the allegations of attempted contact, but as to others in which he denied participation, the district court did not find him credible. Schroeder therefore met her burden to prove that Clouse engaged in a knowing and willful course of conduct directed at Schroeder. Her affidavit stated that this conduct seriously terrified, threatened, or intimidated her and we agree that a reasonable person in Schroeder's position would feel similar. We further find no legitimate purpose for these continued attempts once Clouse was told to stop contacting

Schroeder. Clouse failed to rebut this evidence. Therefore, we affirm the continuance of the harassment protection order issued by the district court.

CONCLUSION

Upon our de novo review of the record, we affirm the district court's order continuing the harassment protection order.

AFFIRMED.