Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/23/2018 08:12 AM CDT

S.B., appellee, v. Paul Pfeifler, appellant.
___ N.W.2d ___

Filed October 23, 2018.    No. A-18-397.

1.  **Judgments: Injunction: Appeal and Error.** A protection order is anal-
    ogous to an injunction. Accordingly, the grant or denial of a protection
    order is reviewed de novo on the record.
2.  **Judgments: Appeal and Error.** In a de novo review, an appellate court
    reaches conclusions independent of the factual findings of the trial
    court. However, where the credible evidence is in conflict on a material
    issue of fact, the appellate court considers and may give weight to the
    circumstances that the trial judge heard and observed the witnesses and
    accepted one version of the facts rather than another.
3.  **Injunction: Proof.** A party seeking an injunction must establish by
    a preponderance of the evidence every controverted fact necessary to
    entitle the claimant to relief.
4.  **Sexual Assault: Proof.** A party seeking a sexual assault protection order
    pursuant to Neb. Rev. Stat. § 28-311.11 (Supp. 2017) must prove a
    sexual assault offense by a preponderance of the evidence.

Appeal from the District Court for Lancaster County: Lori
A. Maret, Judge. Affirmed.

Seth W. Morris, of Berry Law Firm, for appellant.

David W. Watermeier, of Morrow, Poppe, Watermeier &
Lonowski, P.C., L.L.O., for appellee.

Pirtle, Bishop, and Arterburn, Judges.

Bishop, Judge.
S.B. was granted a sexual assault protection order against
Paul Pfeifler by the district court for Lancaster County. Pfeifler

claims the evidence was insufficient to support granting the protection order; we affirm.

## BACKGROUND

S.B. filed a "Petition and Affidavit to Obtain Sexual Assault Protection Order" (petition) on September 29, 2017, in the district court pursuant to Neb. Rev. Stat. § 28-311.11 (Supp. 2017). She claimed that after a work event on September 22, she and a "group of girls" went out for drinks. They were with two doctors initially, one who joined them at their table and another who left. S.B alleged that she "got up to get a drink from the bar and upon returning to the table, [Pfeifler], who [she] barely [knew], smacked [her] butt while [she] was setting [her] drink down on the table." S.B. "was shocked and offended that this doctor, who [she] didn't know, assaulted [her] in this way in front of [her] co-workers." Since she and Pfeifler are part "of the same practice group" and have to attend weekend seminars at times where she would see Pfeifler, S.B. was "concerned that [Pfeifler would] continue this kind of behavior." An "Order to Show Cause Sexual Assault" was entered by the district court setting the matter for hearing on October 6. On that day, Pfeifler personally appeared and indicated he had been served the day before; he requested a continuance, which was granted.

On October 24, 2017, S.B., who was not represented by an attorney, and Pfeifler, who was now represented by an attorney, appeared for the hearing. S.B.'s petition was marked as an exhibit and received by the court. S.B. was sworn in to testify and was asked if the allegations contained in the petition were true; she replied, "Yes." Pfeifler was then sworn in to testify, and the court proceeded to ask him questions. The court asked Pfeifler to look at the paragraph of the petition which contained the allegations related to the incident on September 22 and to tell the court what was true in that statement. Pfeifler answered, "Yes, we were with a group of people. Yes, we were in a booth. No, I did not slap her

or smack her." When asked if he touched S.B. in any way, Pfeifler responded, "Yes. I did bump her with the back of my hand." He explained:

> We were at a bar. It was a tight, tight booth. She was shuffling between. I was watching the entertainment that was on the bar as well as in the aisle. She had stopped in front of me to put down drinks. I reached forward with the back of my hand and gave her a slight bump with the back of my hand — I'm not exactly sure where I contacted her, to my recollection — so that way she would move so I could continue watching the entertainment at the bar.

The court asked, "So it was your intent to touch [S.B.]?" Pfeifler responded, "Yes, I did bump her to have her move out of the way." Pfeifler did not recall anything being said and stated that it "was the only contact or communication that we had that evening." He further testified:

> [W]e were at the bar for more than an hour following such incident, and nothing was brought to my attention until the next morning that there was even a problem. Upon that I did apologize to [S.B.] And, I quote, she accepted my . . . apology and said, "Man, you are good."

The court asked if Pfeifler had anything else he wanted to tell the court about what happened; he responded, "That is it." The court asked S.B. if she had any questions to ask Pfeifler; she did not.

The court then proceeded to question S.B., asking initially whether there was anything more she wanted the court to know. She replied, "I'd say there is absolutely no mistaking between a bump and what he did. It was a full-on slap, and there's no mistaking it." S.B. said she was "not the one who actually saw it," but, rather, "[t]wo other girls saw it." She continued, "I was in shock. I didn't even know what happened. One of the girls told me, 'cause there was two girls who saw it. I didn't even see it. I just felt it." She said the "girls" told her that "[Pfeifler] slapped [her] butt." According to S.B., "There

was no one else in [her] radius besides [Pfeifler], and he was right behind [her] when [she] was putting [her] drink on the table." S.B. said she "tried to chill out for a little bit," finished her drink, and then left. She was "in shock" and did not say anything to Pfeifler at the time. She went back to her hotel and then "spoke with [her] boss in the morning, who spoke with [Pfeifler]."

S.B. said Pfeifler apologized to her the "Saturday after the meetings," and she accepted his apology, but she "probably would have said just about anything to get him away from [her]." According to S.B., Pfeifler said, "'I'm sorry if I offended you or made you feel uncomfortable in any way.'" S.B. said, "He didn't own up to what he did, but he did apologize . . . ." She claimed her boss told Pfeifler that he was "to not come anywhere near [S.B.]" and that he needed to "write a letter to the office apologizing." S.B. said she "made it very clear to [her] doctor and the girls who saw that [she did] not want this man near [her], and he still went against what [her] boss said and came up to [her] after the meeting." When the court finished questioning S.B., the court asked Pfeifler additional questions about the booth in the bar and how he was seated there. The court asked Pfeifler (not his attorney) whether he had any questions of S.B. He did not. The court proceeded to ask S.B. additional questions about the type of bar they were at, and she indicated there was music and dancing in the aisle by patrons and "workers there dancing as well, like, on the bar and stuff." Pfeifler testified that it was a "night club" where the bartenders and waitresses "are all dressed in various skimpy outfits" and "[t]hey dance on the bar." Pfeifler claimed he "was watching the girls dancing on the bar."

The court then asked, "Anything else you want to say?" Pfeifler's attorney responded, "No." The court immediately thereafter stated on the record that it found by a "preponderance of the evidence that the sexual assault protection order should be granted."

A "Sexual Assault Protection Order (After Hearing, No Ex Parte Order Issued)" was entered by the district court on October 24, 2017. The order states that Pfeifler is "enjoined from imposing any restraint upon the person or liberty of the protected party [S.B.]"; "enjoined from harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of [S.B.]"; and "enjoined from telephoning, contacting, or otherwise communicating with [S.B.]" The protection order "is granted for a period of one year from the date of this order" unless renewed or otherwise dismissed or modified by order of the court.

Pfeifler filed a motion for new trial on October 31, 2017, and following a hearing, the district court entered an order on April 10, 2018, denying Pfeifler's motion. Pfeifler appeals from that order and the order granting the sexual assault protection order.

## ASSIGNMENTS OF ERROR

Pfeifler claims, restated, that there was insufficient evidence to support a sexual assault protection order because there was insufficient evidence to prove that a sexual assault occurred, including that S.B. failed to prove the "element of sexual gratification."

## STANDARD OF REVIEW

[1] A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010).

[2] In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

## ANALYSIS

Sexual assault protection orders provide a new avenue of protection for victims of a sexual assault. Last year, the Nebraska Legislature enacted § 28-311.11, which became effective on August 24, 2017. It states, in relevant part:

(1) Any victim of a sexual assault offense may file a petition and affidavit for a sexual assault protection order as provided in subsection (3) of this section. Upon the filing of such a petition and affidavit in support thereof, the court may issue a sexual assault protection order without bond enjoining the respondent from (a) imposing any restraint upon the person or liberty of the petitioner, (b) harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner, or (c) telephoning, contacting, or otherwise communicating with the petitioner.

(2) The petition for a sexual assault protection order shall state the events and dates of acts constituting the sexual assault offense.

(3) A petition for a sexual assault protection order shall be filed with the clerk of the district court and the proceeding may be heard by the county court or the district court as provided in section 25-2740.

(4) A petition for a sexual assault protection order may not be withdrawn except upon order of the court. A sexual assault protection order shall specify that it is effective for a period of one year unless renewed pursuant to subsection (11) of this section or otherwise dismissed or modified by the court. Any person who knowingly violates a sexual assault protection order after service or notice . . . shall be guilty of a Class I misdemeanor except that for any second violation of a sexual assault protection order within a twelve-month period, or any third or subsequent violation, whenever committed, such person shall be guilty of a Class IV felony.

. . . .

(7) A sexual assault protection order may be issued or renewed ex parte without notice to the respondent if it reasonably appears from the specific facts shown by affidavit of the petitioner that irreparable harm, loss, or damage will result before the matter can be heard on notice. . . .

. . . .

(11) An order issued under subsection (1) of this section may be renewed annually. To request renewal of the order, the petitioner shall file a petition for renewal and affidavit in support thereof at least forty-five days prior to the date the order is set to expire. . . .

(12) For purposes of this section, sexual assault offense means:

(a) Conduct amounting to sexual assault under section 28-319 or 28-320 or sexual assault of a child under section 28-319.01 or 28-320.01 or an attempt to commit any of such offenses; or

(b) Subjecting or attempting to subject another person to sexual contact or sexual penetration without his or her consent, as such terms are defined in section 28-318.

Neb. Rev. Stat. § 28-319 (Reissue 2016) states that first degree sexual assault occurs when any person "subjects another person to sexual penetration" without consent (or under other circumstances not relevant here). There is no claim of sexual penetration in the present matter. Neb. Rev. Stat. §§ 28-319.01 and 28-320.01 (Reissue 2016) pertain to sexual assault of a child; these sections are also not relevant here. However, relevant to the present case, Neb. Rev. Stat. § 28-320 (Reissue 2016) states that second and third degree sexual assault occurs when any person "subjects another person to sexual contact" without consent of the victim or when the victim was physically or mentally incapable of resisting or appraising the nature of his or her conduct. As applied here, the question is whether the facts support that Pfeifler subjected or attempted to subject S.B. to sexual contact without her consent.

According to Neb. Rev. Stat. § 28-318(5) (Reissue 2016), "[s]exual contact" means, in relevant part:

> [T]he intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts [genital area, groin, inner thighs, buttocks, or breasts, see § 28-318(2)]. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

Pfeifler described the place he and S.B. were at as a "night club." He said the bartenders and waitresses were "all dressed in various skimpy outfits" and "[t]hey dance[d] on the bar." Pfeifler testified that he "was watching the girls dancing on the bar," and he admitted to touching S.B. Pfeifler said that "[S.B.] had stopped in front of [him] to put down drinks" and that he "reached forward with the back of [his] hand and gave her a slight bump with the back of [his] hand." He said he "did bump her to have her move out of the way," but he was not sure where he touched her. However, S.B. said there was "absolutely no mistaking between a bump and what he did. It was a full-on slap, and there's no mistaking it." She said she did not see Pfeifler do this, but she "just felt it." She said the "girls" told her that "[Pfeifler] slapped [her] butt." Further, according to S.B., "There was no one else in [her] radius besides [Pfeifler], and he was right behind [her] when [she] was putting [her] drink on the table." She was "in shock" and did not say anything to Pfeifler at the time. She spoke with her boss, who then spoke with Pfeifler. Pfeifler subsequently apologized to S.B. According to S.B., he told her, "'I'm sorry if I offended you or made you feel uncomfortable in any way.'"

[3,4] A protection order is analogous to an injunction. *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999). A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief. See *Abboud v. Lakeview, Inc.*, 237 Neb. 326,

466 N.W.2d 442 (1991). Accordingly, a party seeking a sexual assault protection order pursuant to § 28-311.11 must prove a sexual assault offense by a preponderance of the evidence.

Pfeifler claims there "was no evidence adduced at the hearing that shows a clear intent of Pfeifler's actions." Brief for appellant at 5. He claims that "[S.B.] did not see who 'slapped' or 'smacked' her" and that Pfeifler "did not intentionally contact the sexual or intimate parts of [S.B.], [and] any contact that occurred was unintentional in an attempt to get a better view of the entertainment at the bar." *Id*. at 6. He claims this evidence falls short of establishing a sexual assault by a preponderance of the evidence. However, as noted above, S.B. testified to feeling the slap on her buttocks, and the two "girls" saw it happen. And nobody else but Pfeifler was near S.B. at the time. Even Pfeifler admits that S.B. stopped in front of him to put down drinks when the contact occurred. In summary, there was no dispute there was physical contact when Pfeifler intentionally touched S.B. However, the district court was presented with competing testimony as to the precise nature of the contact. Pfeifler admitted to intentional contact but claimed that it was a "slight bump" and that he was not sure where the contact occurred, whereas S.B. claimed it was an intentional slap on her buttocks.

Even on de novo review, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014). We apply this standard here and defer to the district court's acceptance of S.B.'s version of the facts over Pfeifler's version. There is sufficient evidence to support that Pfeifler slapped S.B. on her buttocks.

However, Pfeifler also claims there was "no evidence introduced that Pfeifer seemed sexually aroused by the contact." Brief for appellant at 7. He claims his conduct was "for the sole purpose of moving [S.B.] out of the way so that he could

see the entertainment at the bar." *Id.* He argues that there were no witnesses who testified about Pfeifler's demeanor after the contact occurred and no evidence that Pfeifler "seemed sexually aroused by the contact." *Id*. He claims, "To the contrary, all evidence adduced at the hearing points to the contact being accidental in nature." *Id*. He contends proof of sexual gratification is "a condition precedent necessary to reach the ultimate conclusion that [S.B.] was the victim of sexual contact, and therefore the District Court erred in granting the sexual assault protection order." *Id*.

"Whether there is sufficient evidence to prove sexual arousal or gratification (which, by necessity, must generally be inferred from the surrounding circumstances) is extraordinarily fact driven." *State v. Brauer*, 287 Neb. 81, 94, 841 N.W.2d 201, 210 (2013). Even sexual contact done for the defendant's amusement can be reasonably construed as being for the purpose of sexual arousal or gratification. *State v. Osborne*, 20 Neb. App. 553, 826 N.W.2d 892 (2013). See *State v. Charron*, 226 Neb. 871, 415 N.W.2d 474 (1987) (act of defendant who grabbed woman from behind, pressed forcefully in her vaginal area, and then walked away, laughing and bobbing his head, were circumstances from which trial court could find that defendant's conduct was for purpose of his sexual arousal or gratification).

In its order denying Pfeifler's motion for new trial, the district court addressed Pfeifler's argument that the evidence did not establish sexual arousal or gratification. The court noted, "According to [Pfeifler], the contact was accidental and was not made for the purpose of sexual arousal or gratification." The district court, quoting § 28-318(5), properly concluded that the conduct need only be "'reasonably construed as being for the purpose of sexual arousal or gratification.'" (Emphasis omitted.) The court then summarized the evidence, as we have already set forth above, and stated that it "found [S.B.] credible and the evidence to be sufficient to grant the sexual assault protection order."

The district court did not specifically say that Pfeifler's conduct would be reasonably construed as being for the purpose of sexual arousal or gratification, but as noted by S.B., the court "properly considered all attendant facts of the case and properly determined that [Pfeifler's] actions, in that setting and under those circumstances, rose to the level of being for the purpose set forth in the applicable statute." Brief for appellee at 12. In this court's de novo review, we have considered the circumstances surrounding the contact and conclude that a slap on a woman's buttocks in a nightclub can be reasonably construed as being for the purpose of sexual arousal or gratification.

## CONCLUSION

We affirm the district court's entry of a sexual assault protection order in this case.

Affirmed.