IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KORTH V. KARPF


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


SHEILA J. KORTH, NOW KNOWN AS SHEILA J. KORTH-FOCKEN,

APPELLANT AND CROSS-APPELLEE,

V.

HENRY J. KARPF, APPELLEE AND CROSS-APPELLANT.


Filed January 20, 2025.   Nos. A-25-205, A-25-259 through A-25-261.


Appeals from the District Court for Douglas County: DEREK R. VAUGHN, Judge. Affirmed.

Sheila J. Korth-Focken, pro se.

Tera J. Hanson, Dennis G. Whelan, and Virginia A. Albers, of Slowiaczek Albers & Whelan, P.C., L.L.O., for appellee.


RIEDMANN, Chief Judge, and PIRTLE and FREEMAN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Sheila J. Korth, now known as Sheila J. Korth-Focken, appeals, and Henry J. Karpf cross-appeals, from the order of the district court for Douglas County modifying custody of their children. Sheila also appeals from orders denying her requests for protection orders against Henry in three separate cases in the district court for Douglas County. This court consolidated the cases for briefing and disposition. Following our review, we affirm the judgment of the district court in each case involved in this appeal.

## II. BACKGROUND

Henry and Sheila married in 2010, and in August 2022 a decree of dissolution was entered. The parties were awarded joint legal and physical custody of their two children, a son born in 2013

- 1 -

and a daughter born in 2015. We recount the procedural history of each case here and will provide additional facts below as necessary.

As a preliminary matter, we note that Sheila's brief does not conform with our briefing standards under Neb. Ct. R. App. P. § 2-109(D) (rev. 2025). It contains assignments of error sections, but each assigned error is followed by argument, and there is no separate argument section. Section 2-109(D)(1)(e) requires that a party set forth a separate and concise statement of each error the party contends was made by the trial court, through separately numbered and paragraphed assignments of error. Section 2-109(D)(1)(h)(i) requires an argument section that presents each question separately. Despite Sheila's failure to place her arguments in an appropriate section, we can identify her assigned and argued errors and, therefore, will address them as assigned.

### 1. DOMESTIC ABUSE PROTECTION ORDER

On June 12, 2024, Sheila filed a petition and affidavit seeking a domestic abuse protection order for herself and the children. She made various allegations, dating back to 2017, of instances she claimed showed Henry's physical and sexual abuse. The same district court judge that was presiding over the parties' modification case presided over this matter. The district court set a show cause hearing for June 25, 2024, but for reasons not set forth in the record, this hearing did not occur until March 2025. Following the hearing, the district court dismissed the petition, finding that Sheila had failed to carry her burden to show the facts in the petition and affidavit were true. Sheila appeals.

### 2. MODIFICATION ACTION

In March 2023, Sheila filed a complaint to modify custody in which she sought sole legal and physical custody of the children, or in the alternate, final decisionmaking authority. Henry filed a counterclaim in which he sought sole legal and physical custody of the children. A guardian ad litem (GAL) was appointed for the children in April. In November 2024, the district court, upon Sheila's request, dismissed her complaint to modify. Trial was held on Henry's counterclaim on December 16 and 18, and January 8 and 10, 2025. The district court found there was a material change in circumstances and modified the parties' decree of dissolution to grant Henry sole legal and physical custody, subject to Sheila's parenting time. Sheila appeals, and Henry cross-appeals.

### 3. SEXUAL ASSAULT PROTECTION ORDERS

In March 2025, Sheila filed a petition and affidavit seeking a sexual assault protection order on behalf of each child. The petition was based on Henry's alleged physical and sexual abuse of the children. The district court entered ex parte sexual assault protection orders. The orders were entered by a judge other than the one who had presided over the request for a domestic abuse protection order and the modification proceedings.

Henry filed a motion to vacate and dismiss the ex parte orders and petitions, and the district court vacated the orders and set the matters for a consolidated hearing. Following the hearing, the district court dismissed the petitions. Sheila appeals.

### III. DOMESTIC ABUSE PROTECTION ORDER

#### 1. STANDARD OF REVIEW

A protection order pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2024) is analogous to an injunction; thus, the grant or denial of a protection order is reviewed de novo on the record. *Rachel C. on behalf of Clayton R. v. Amos R.*, 32 Neb. App. 473, 1 N.W.3d 528 (2023). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

#### 2. ASSIGNMENTS OF ERROR

Sheila assigns, restated, that the district court erred in failing to (1) grant a domestic abuse protection order despite evidence of a pattern of domestic abuse and sexual assault toward petitioners, likely to continue and (2) read the petition and affidavit for a domestic abuse protection order, constituting an abuse of discretion.

#### 3. ADDITIONAL BACKGROUND

Sheila's petition and affidavit in support of the domestic abuse protection order alleged that Henry had committed various acts of physical and sexual abuse against Sheila and the children. The dates of the alleged incidents ranged from 2017 to 2024.

At the show cause hearing, the petition and affidavit were entered into evidence. Sheila confirmed she had reported the abuse allegations to law enforcement, Child Protective Services (CPS), the children's GAL, and medical professionals multiple times and acknowledged that no criminal charges had been filed against Henry.

For example, when describing one incident involving a bruise on the parties' son, Sheila stated she submitted pictures to CPS, and she confirmed that no investigation resulted from the incident. Henry noted the parties' son played high contact sports, and that certain bruises occurred around the time of practices. Henry did not recall various incidents Sheila described in the petition. He stated that some of the instances of alleged abuse took place in front of medical professionals, who did not report them as child abuse.

The district court took the matter under advisement and later entered an order denying the petition for a domestic abuse protection order. In dismissing the petition, the district court found Sheila had not met her burden of proof and that the evidence presented did not establish any pending threat of future harm or a pattern of abuse foreshadowing future harm.

#### 4. ANALYSIS

##### (a) Failure to Grant Protection Order

Sheila assigns that the district court erred in failing to grant a domestic abuse protection order despite evidence of a pattern of domestic abuse and sexual assault toward petitioners, likely to continue. We find that the district court did not err in this regard. We note that Sheila's petition was filed pursuant to § 42-924. This statute has since been transferred to Neb. Rev. Stat. § 26-103

(Supp. 2025). We will analyze Sheila's assigned errors using the law applicable at the time the petition was filed.

Under the Protection from Domestic Abuse Act, Neb. Rev. Stat. § 42-901 et. seq. (Reissue 2016 & Cum. Supp. 2024), a victim of domestic abuse may file a petition and affidavit for a protection order with the clerk of the district court. See § 42-924. For purposes of the statute, abuse includes attempting to cause, or intentionally and knowingly causing, bodily injury with or without a dangerous instrument or engaging in sexual contact or sexual penetration without consent. See Neb. Rev. Stat. § 42-903 (Cum. Supp. 2024). If the order is not issued ex parte, the district court shall schedule a hearing at which the petitioner must establish by a preponderance of the evidence the truth of the facts supporting their entitlement to relief. See, Neb. Rev. Stat. § 42-925 (Cum. Supp. 2024); *Rachel C. on behalf of Clayton R. v. Amos R.*, 32 Neb. App. 473, 1 N.W.3d 528 (2023). If the petitioner is successful, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. *Id*.

At the hearing, Sheila recounted instances she claimed showed Henry's abuse, and Henry either did not recall the incidents or described them differently. The evidence presented was in conflict. Although our review is de novo on the record, when credible evidence is in conflict on a material issue of fact, we may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of facts rather than another. See *Rachel C. on behalf of Clayton R., supra.* The district court heard the testimony of the parties and reviewed the petition and affidavit, and it ultimately concluded that Sheila failed to meet her burden. Based on our de novo review of the record, giving weight to the district court's observations, we do not find the district court erred in failing to grant a domestic abuse protection order. This assignment of error fails.

### (b) Failure to Read Petition

Sheila assigns that the district court's failure to read the petition and affidavit for a domestic abuse protection order amounts to an abuse of discretion. The record reveals that the district court did review the petition and affidavit before making its ruling.

At the show cause hearing, the district court informed Sheila it had not read the petition and affidavit and asked Sheila to explain where she wanted it to focus. At the conclusion of the hearing, the district court stated it would take the matter under advisement. In its order, the district court noted it had "considered all relevant, competent evidence and disregarded all irrelevant, incompetent evidence." The record shows that the district court considered all the evidence, which included the petition and affidavit, before making its decision. This assignment of error fails.

### IV. MODIFICATION ACTION

#### 1. STANDARD OF REVIEW

In a dissolution action or modification of a decree related to child custody, visitation, or support, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees. *Larson v. Larson*, 33 Neb. App. 609, 23 N.W.3d 670 (2025). An abuse of discretion occurs when a district court bases its decision upon

reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## 2. ASSIGNMENTS OF ERROR

Sheila assigns, reordered and restated, that the district court erred by (1) modifying custody of the children without a material change in circumstances, (2) awarding Henry custody of the children without making special findings, (3) engaging in gender bias against her, (4) requiring her parenting time be professionally supervised, (5) issuing a step-up parenting plan, (6) limiting her reporting ability under Neb. Rev. Stat. § 28-711 (Reissue 2016), (7) effectively eliminating all her parenting time without making a finding that she was unfit, and (8) removing the right of first refusal from the original parenting plan.

## 3. ADDITIONAL BACKGROUND

### (a) Abuse Allegations

Beginning in December 2022, Henry noticed Sheila was taking the children to the doctor. She also started asking Henry questions regarding whether he had ever hit their son. In March 2023, Sheila was granted temporary ex parte custody of the children, based on her allegations that Henry was interfering with the children's therapeutic needs and that he had inappropriate sexual interactions with their daughter.

Henry received notice from officials with their son's sports league that Sheila had informed them Henry was accused of abuse, and the officials told Henry he could not assist with the league. Sheila informed a third party that due to the abuse allegations, Henry was not permitted on the campus of a particular child advocacy center. At one point, Sheila refused to let the children attend activities if Henry was present, stating that the organizations did not follow proper policies.

Henry's testimony spanned multiple days of trial. The evening prior to one of the days on which Henry testified, Sheila sent messages to a medical facility, seeking treatment for their son. She stated in one of the messages that Henry had been abusive in the past, that she had a domestic abuse protection order against him, and that he lied about medical appointments and other matters. When questioned about this incident during her trial testimony, Sheila stated that she "did not raise any allegations, no. I stated facts." She said she had never raised false allegations against anyone. The children both testified in camera. We have reviewed and considered that testimony, though we do not recount it here.

### (b) Guardian ad Litem

By September or October 2023, the GAL had concluded that the abuse allegations were unfounded. However, Sheila continued to make allegations to the children's doctors, teachers, and coaches. The allegations resulted in the parties' daughter receiving seven or eight pelvic examinations in an 18-month period. Sheila had been ordered not to engage in this behavior, but continued to do so, which significantly concerned the GAL. The GAL felt that when "all the administrative bodies that are designed to protect children have done their investigation and they have determined several times that abuse is not occurring," there needed "to be a point where it's accepted and moved forward." That had not occurred in this case and Sheila had not taken steps to alleviate the GAL's concerns.

### (c) Medical Professionals

The children had been treated by multiple therapists and physicians. One therapist stated that nothing was disclosed that warranted reporting, but she was concerned the children were being mentally abused by being forced to participate in unnecessary programs. The therapist treating the parties' son felt Sheila was extremely focused on what was considered appropriate or inappropriate touching. She reported the parties' son was not comfortable with unsupervised parenting time with Sheila.

In August 2023, a physician treating the parties' daughter reported that there was no evidence the daughter had been sexually assaulted and that the issue had been addressed by police and CPS and nothing concerning was discovered. The physician noted that Henry and Sheila were informed that "weaponizing these types of issues will only create further psychological/somatic issues for the children."

A therapist treating the parties' daughter noted that although the allegations had been investigated, Sheila continued to repeat them. She felt Sheila's parenting time should be supervised until she stopped asking the children about sexual abuse and touching. The therapist noted that exposing the children to hospitals, examinations, and inappropriate comments could be detrimental to their long-term growth.

### (d) Psychological Evaluation

In August 2023, a law enforcement officer who had received several calls related to Sheila's allegations wished to examine whether Sheila should be investigated for abuse of process. He set a meeting with therapists treating the children, employees of a child advocacy center, and a deputy county attorney. At the meeting, the officer reported that Sheila had informed him that the children had disclosed abuse in therapy, but the therapists stated that was not true. The group recommended Sheila complete a psychological evaluation, which she did in 2024.

In the evaluation, the psychologist noted that she did not believe Sheila was being malicious or intentionally exaggerating, and that she appeared to have the best interests of her children in mind. However, Sheila's "functioning unravels and becomes quite dysfunctional in relation to her unshakeable belief that her children are being abused" and she "maintains this belief despite the repeated investigations by multiple agencies that have not substantiated the claims or concerns."

### (e) Other Evidence

CPS began receiving reports that Henry was abusing the children starting in late 2022, and all were determined to not meet the required criteria to proceed. In June 2024, Henry was granted temporary sole legal and physical custody of the children, subject to Sheila's supervised parenting time. In October, members of Sheila's family signed affidavits stating their belief that it was not in the children's best interests to be in Randolph, Nebraska, where Sheila had been living, for supervised or unsupervised parenting time with Sheila.

### (f) District Court Order

The district court found there was a material change in circumstances in that Sheila had repeatedly accused Henry of sexual misconduct against the children but presented no credible

evidence that the allegations had merit. Because of this, the children had been subjected to excessive interrogation and examination, and it had impacted their extracurricular activities.

The district court determined it was in the children's best interests that Henry be awarded sole legal and physical custody, subject to Sheila's parenting time. The order required Sheila's parenting time to be professionally supervised. After she completed a parenting class and attended four therapy sessions, Sheila would be allowed unsupervised parenting time. The order set forth that the parties were not permitted to take the children out of the country unless both agreed in writing. Each party was responsible for his or her own attorney fees.

Henry filed a motion to reconsider and/or alter or amend, and Sheila filed a request for modification. Following a hearing, the district court granted the motions in part and denied them in part. As relevant here, the district court denied Henry's motion to permit him to travel out of the country with the children without Sheila's permission and denied his motion for attorney fees.

## 4. ANALYSIS

Before addressing the assigned errors, we recount the case law applicable to custody modifications. The right of parenting time is subject to continual review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances. *Sulzle v. Sulzle*, 318 Neb. 194, 14 N.W.3d 532 (2024). Proof of a material change of circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Id*. A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id*. The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child. *Id*.

### (a) Material Change in Circumstances

Sheila assigns that the district court erred in modifying custody of the children without a material change in circumstances. However, the district court determined a material change in circumstances had occurred after the entry of the previous custody order. Specifically, that Sheila, without credible evidence, had repeatedly alleged to third parties that Henry had engaged in sexual and/or physical misconduct toward the children.

The evidence showed Sheila filed for ex parte temporary custody and then informed various third parties about the allegations she had made. This disrupted Henry's ability to be involved with the children's extracurricular activities. The allegations also caused the parties' daughter to undergo numerous invasive physical examinations. Henry stated that this began in late 2022, and the CPS records confirm this is when reports began. This was after the entry of the initial decree. Sheila continued making allegations despite the fact they had been determined to be unfounded, including making the allegations during trial.

Sheila's allegations, despite being investigated and determined to be unfounded, have continued. This has had an impact on the children's mental and physical health and affected their participation in extracurricular activities. As Sheila testified at trial that she had never made an unfounded allegation, it does not appear that the accusations will subside. Based on this record,

we cannot say the district court abused its discretion in determining that a material change in circumstances had occurred. We reject this assignment of error.

### (b) Special Findings

Sheila assigns that the district court erred in awarding Henry custody of the children without making special findings. We find no error.

Pursuant to Neb. Rev. Stat. § 43-2932 (Reissue 2016), when a parent has been found to engage in certain activities, including child abuse or domestic abuse, a court shall not order legal or physical custody be given to that parent without making special written findings that the child and other parent can be adequately protected from harm by such limits as may be imposed. Sheila's argument to support this assigned error relies on her assertion that Henry engaged in domestic abuse, child abuse, and sexual assault. However, the district court found the abuse allegations were without merit.

Reviewing the record, including the GAL report that determined the allegations were unfounded, we cannot say this finding was incorrect. As such, special written findings were not required. The district court did not abuse its discretion in failing to make special written findings when awarding Henry custody.

### (c) Gender Bias

Sheila assigns that the district court erred by engaging in gender bias against her. We find no evidence of gender bias.

Neb. Rev. Stat. § 42-364 (Cum. Supp. 2024) provides in part that when determining legal or physical custody, a court shall not give preference to either parent based on the sex of the parent, and no presumption shall exist that either parent is more fit or suitable than the other. Sheila bases her argument on the district court's statement that Henry had "taken more of a role in caring for the minor children." Sheila provides no explanation as to how this statement reveals bias against her because of her gender, and we are unable to see how it does. Nothing in the record indicates the district court gave preference to either parent based on gender. This assignment of error fails.

### (d) Supervised Parenting Time

Sheila argues the district court erred in requiring her parenting time be professionally supervised. She argues that no professional has ever found her to be a danger to the children or abusive toward them. We find no abuse of discretion in the district court's requiring professionally supervised parenting time.

Sheila's parenting time was supervised after June 2024. The therapist treating the parties' daughter recommended that visits continue to be supervised until Sheila stopped asking the children about potential sexual abuse. One therapist felt Sheila was very focused on appropriate and inappropriate touching. Still another therapist believed the children could be experiencing mental abuse by being forced to participate in unnecessary programs.

Henry reported that when visits were supervised by a professional, rather than a family member, the children did not state that inappropriate conversations occurred. We will not recount the children's in camera testimony, but we have taken it into consideration along with the other

evidence. We cannot say the district court erred in finding supervised parenting time to be in the best interests of the children, at least until certain requirements were met.

Sheila's parenting time was not ordered to be supervised permanently. To be awarded unsupervised parenting time, Sheila need only participate in a parenting class, attend four therapy sessions, and ensure there were no safety concerns reported during the supervised parenting time. When viewing the facts and circumstances of this case, these are not overly burdensome requirements. The district court did not abuse its discretion in ordering Sheila's parenting time be professionally supervised until she meets certain requirements.

### (e) Step-up Parenting Plan

Sheila assigns that the district court erred in issuing a step-up parenting plan. As noted above, Sheila's parenting time was to be professionally supervised until Sheila reached certain goals, including attending a parenting class and four therapy sessions. We find no abuse of discretion in the district court's order for a step-up parenting plan.

Sheila argues that no reports or agencies had expressed child abuse or neglect concerns about her. However, there were concerns expressed by third parties regarding Sheila's parenting. A former therapist expressed concerns that the children were possibly experiencing mental abuse by being forced to participate in unneeded programs. The physician treating the parties' daughter advised the parties that the "weaponizing" of allegations would create further psychological/somatic issues for the children. A therapist treating the parties' daughter was concerned about the number of examinations the daughter had undergone. Sheila's own family members had concerns about the time the children spent with her. In August 2023, a law enforcement officer held a meeting to determine whether Sheila was engaging in abuse of process. This same officer expressed concerns about Sheila's fitness as a parent.

Contrary to Sheila's argument, there have been concerns raised about her parenting. The step-up parenting plan was designed to ensure Sheila addressed issues that could be harmful to the children before moving to unsupervised parenting time. The district court did not abuse its discretion in ordering a step-up parenting plan.

### (f) Reporting Ability

Sheila assigns that the district court erred by limiting her reporting ability under § 28-711. We do not read the language in the district court's order as limiting her ability to report under the statute.

Pursuant to § 28-711, any person who "has reasonable cause to believe that a child has been subjected to child abuse or neglect or observes such child being subjected to conditions or circumstances which reasonably would result in child abuse or neglect" shall report the incident. The district court, when identifying safety concerns for the different phases of the parenting plan, specifically identified the "reporting of unfounded allegations to third parties" related to Henry's past conduct with the children. It did not specifically reference the mandatory reporting duty under § 28-711.

The order does not prohibit Sheila from making a report when she has reasonable cause to believe the children are being abused. The district court's order referred to unfounded allegations regarding past conduct. The evidence showed that Sheila has continued her accusations despite the

allegations having been reported and determined to be unfounded. A prohibition from reporting allegations that have already been investigated and determined to be unfounded does not require Sheila to violate her mandatory reporting duty. Sheila can comply with the district court's order without violating the statute. The district court did not abuse its discretion in this regard.

### (g) Unfitness

Sheila assigns that the district court erred in effectively eliminating all her parenting time without making a finding that she was unfit. We disagree. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. *Scott v. Dorrance*, 32 Neb. App. 213, 995 N.W.2d 226 (2023). Here, the district court determined that granting Henry sole legal and physical custody, and a step-up parenting approach, was in the children's best interests. Thus, a finding of unfitness was not required. This assignment of error fails.

### (h) Right of First Refusal

Sheila assigns that the district court erred in removing the right of first refusal from the original parenting plan. Her argument in support of this assigned error is brief and asserts Henry failed to properly raise the issue in his counterclaim and failed to present evidence that it was in the children's best interests to spend time without a parent rather than with her. To the extent Shiela's assigned error is sufficiently argued, we reject her claim.

Although the right of first refusal was not specifically mentioned in the counterclaim, it is clear that Henry was seeking sole physical custody and limitations on Sheila's parenting time. Henry's proposed parenting plans eliminated the right of first refusal provision that was contained in the original parenting plan. Sheila does not argue that she was unaware that the provision was at issue. Therefore, we find the absence of a specific request regarding the right of first refusal in the counterclaim did not preclude the district court from eliminating the provision.

The district court determined that a step-up parenting time approach was in the children's best interests and limited Sheila's parenting time during phase I to Tuesday afternoons and 6 hours every other Sunday. Phase II extended the time to Tuesday afternoons and every other weekend from Friday at 5 p.m. until Sunday at 5 p.m. As stated by the district court in its order on Henry's motion to alter or amend, in light of the modification of custody, retaining a right of first refusal would be conflicting and not in the children's best interests. Given the district court's determination that a step-up parenting plan provision was necessary and limited parenting time was in the children's best interests, we agree that removal of the right of first refusal provision was consistent with the court's objective. We find no abuse of discretion by the district court in its removal of the right of first refusal provision.

## V. CROSS-APPEAL

### 1. Assignments of Error

Henry assigns, restated, that the district court erred in (1) failing to award attorney fees and (2) ordering that the parties must mutually agree to any international travel with the children.

## 2. ANALYSIS

### (a) Attorney Fees

Henry assigns that the district court erred in failing to award attorney fees. He argues that Sheila pursued multiple claims and motions that she knew or should have known were unsupported by the record. We find the district court did not abuse its discretion in denying Henry's request for attorney fees.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Larson v. Larson*, 33 Neb. App. 609, 23 N.W.3d 670 (2025). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id*. A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Id*. However, at the time the affidavit in support of attorney fees was offered at trial, Henry's testimony as to why he was entitled to an award of attorney fees was centered primarily on Sheila's behavior.

Consequently, in denying Henry's request for attorney fees, the district court focused on whether Sheila advanced frivolous claims or defenses and noted that Sheila appeared pro se during the case. It stated that pursuant to Neb. Rev. Stat. § 25-824(6) (Reissue 2016), a pro se party shall not be assessed attorney fees unless that party knew or reasonably should have known the action or defense or any part of the action or defense was frivolous or made in bad faith. The district court stated that although Sheila was unable to meet her burden of proof on various matters, it did not mean the actions were frivolous. It did note that continuing to relitigate matters previously addressed could be found frivolous and subject to imposition of attorney fees.

When it modified custody, the district court specifically stated its belief that Sheila was not acting in bad faith and that she believed her actions were to protect the children. Sheila's psychological evaluation noted that it did not appear that Sheila was being malicious or intentionally exaggerating, and that she believed she was doing what she must to protect her children.

At the hearing on Henry's motion to alter or amend, counsel once again focused on the "numerous frivolous pleadings" Sheila filed and requested the court to reconsider its determination that Henry was not entitled to attorney fees. In denying this request, the district court again focused on whether Sheila's positions were frivolous and determined that they were not.

Although Henry was the successful party, he sought recovery of attorney fees on the basis that Sheila had taken positions that were frivolous or in bad faith. On this record, we cannot say the district court's reasons for denying attorney fees were untenable or clearly against justice or conscience, reason, or evidence. Henry has not shown an abuse of discretion. This assignment of error fails.

### (b) International Travel

Henry assigns the district court erred in ordering that the parties must mutually agree to any international travel with the children. We find no abuse of discretion in this regard.

In denying Henry's motion to alter or amend the modification order on this issue, the district court stated that although international travel had certain educational and cultural benefits, it was not a requirement for the children to become successful, well-adjusted adults. It noted that

the parties were not prohibited from seeking a court order regarding international travel when it would be in the children's best interests.

Henry argues that the district court acknowledged the parties cannot effectively communicate, and that the children have previously lived abroad and have grown accustomed to international travel. Henry recognizes that Sheila may have concerns but argues there were steps that could be implemented to address those issues. We acknowledge that based on the history of the parties, it seems unlikely they will be able to mutually agree on the children traveling internationally with the other parent. The parties each have concerns about the children being unilaterally taken out of the country by the other parent.

The district court noted that if a parent believed a specific trip would be in the children's best interests, that parent could seek a court order permitting the travel. We review for an abuse of discretion and based on this record we cannot say the district court's decision was clearly against justice or conscience, reason, or evidence. Henry has not shown an abuse of discretion. This assignment of error fails.

## VI. SEXUAL ASSAULT PROTECTION ORDERS

### 1. STANDARD OF REVIEW

A protection order is analogous to an injunction. *S.B. v. Pfeifler*, 26 Neb. App. 448, 920 N.W.2d 851 (2018). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id*. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

### 2. ASSIGNMENTS OF ERROR

Sheila assigns, combined and restated, that the district court erred in (1) failing to grant long-term sexual assault protection orders for the children, despite initially issuing the orders, Henry's failure to show why they should be rescinded, and the evidence Sheila presented at the show cause hearing, and (2) not allowing her to present additional evidence at the show cause hearing.

### 3. ADDITIONAL BACKGROUND

A week after the district court issued its order awarding Henry full legal and physical custody of the children in the modification action, Sheila filed a petition on behalf of each child, seeking a sexual assault protection order. The petitions were not assigned to the same judge that had presided over the modification action. The district court initially granted the ex parte sexual assault protection orders. Upon Henry's motion that the allegations had been found not credible in the modification case, it vacated the orders and scheduled the cases for a combined hearing.

At the hearing, the district court received copies of the petitions into evidence. Henry's counsel argued that the same allegations in the petitions had been asserted in the modification action and a prior protection order that had both been decided by a different district court judge. Sheila was the only witness, and she acknowledged that Henry had been granted sole custody in

the modification action and that she was appealing that order. The district court stated that Sheila had filed the petitions to obtain custody of the children, but the decision regarding custody had been issued by a different judge and was being appealed. It stated that the judge that had made the ruling in the modification action was the proper judge to decide these matters. The district court dismissed both cases.

4. ANALYSIS

(a) Failure to Grant Protection Orders

Sheila assigns that the district court erred in failing to grant long-term sexual assault protection orders for the children, despite initially issuing the orders, Henry's failure to show why they should be rescinded, and the evidence Sheila presented at the show cause hearing. We find the district court did not err in its decision to not grant sexual assault protection orders.

Sheila petitioned for sexual assault protection orders for the children under Neb. Rev. Stat. § 28-311.11 (Cum. Supp. 2024). That statute has since been repealed. See Neb. Laws 2025, L.B. 80, § 52. We will review the assigned errors under the law applicable at the time they were filed. Section 28-311.11 allowed a victim of sexual assault to file a petition and affidavit for a sexual assault protection order with the clerk of the district court. If a sexual assault protection order was not issued ex parte, the district court was to schedule an evidentiary hearing within 14 days. See *id*. The party seeking a sexual assault protection order pursuant to § 28-311.11 had to prove a sexual assault offense by a preponderance of the evidence. See *S.B. v. Pfeifler*, 26 Neb. App. 448, 920 N.W.2d 851 (2018).

The petitions for a sexual assault protection order were filed in the district court for Douglas County, which is the same court in which the modification action was pending. The fourth judicial district, which comprises Douglas County, has a specific rule regarding the assignment of a case seeking a protection order when the petitioner or respondent is a party to a domestic relations or paternity action currently pending before the court. The rule provides, in part, that in such a situation, the case "shall be assigned to the judge to whom the first such case is assigned, or to the judge who has pending before her or him a previously filed protection order, domestic relations, or paternity matter." Rules of Dist. Ct. of Fourth Jud. Dist. 4-12 (rev. 2022).

Here, the modification action was pending in the same court, and the petitions for a sexual assault protection order should have been assigned to the judge presiding over that action. For whatever reason, the petitions were assigned to a different judge. That judge, recognizing the local rule required the petitions to be assigned to the judge presiding over the modification action, dismissed them. The petitions were dismissed without prejudice, and Sheila could have refiled them so that they could have been properly assigned according to the local rule. The district court did not err in deferring to the judge that was presiding over the modification action, pursuant to local court rules. This assignment of error fails.

(b) Evidence at Hearing

Sheila assigns that the district court erred by not allowing her to present additional evidence during the show cause hearing. As discussed above, these cases should have been assigned to the judge presiding over the modification action pursuant to local court rules. They were dismissed

- 13 -

because they had not been properly assigned. Additional evidence would not have changed this outcome. This assignment of error fails.

## VII. CONCLUSION

Having reviewed and rejected all errors raised by both Sheila and Henry, we affirm the judgment of the district court in each case involved in this consolidated appeal.

AFFIRMED.